IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　Plaintiff,<br><br>　　　　v.<br><br>FERNANDO CRESPO-RIOS,<br><br>　Defendant. | CRIMINAL NO. 08-208 (JAG) |

OPINION AND STATEMENT OF REASONS PURSUANT TO 18 U.S.C. § 3553(c)(2)

GARCIA GREGORY, D.J.

　　　On August 15, 2013, this Court sentenced defendant Fernando Crespo-Rios ("Crespo-Rios" or "Defendant") to time served and 15 years of supervised release after he pled guilty to both counts of the Indictment, which charged Defendant with (1) transferring obscene material to a minor in violation of 18 U.S.C. § 1470 and (2) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Docket No. 129. The Government appealed the sentence, and the First Circuit vacated and remanded the matter for resentencing. Docket Nos. 131, 141 & 142. The Court finds that resentencing Defendant to the same sentence —that is, time served followed by a long period of supervised release— is justified in view of each of the sentencing factors outlined in 18 U.S.C. § 3553.

## DISCUSSION

　　　On appeal, the First Circuit found that this Court had provided inadequate justification for the sentence it imposed. Docket No. 141 at 15. The court explained that, because the Guidelines sentencing range was 70 to 87 months, a sentence of time served is an extraordinary

variance that requires commensurate explanation. *Id.* at 2. Accordingly, the Court proceeds to follow the First Circuit's instruction and explain in further detail how the time-served sentence is appropriate in light of the sentencing factors laid out in 18 U.S.C. § 3553.

I. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The nature and circumstances of the offense, as well as the history and characteristics of Crespo-Rios, weigh heavily in favor of a sentence of time served.[1] As the Court noted in the first sentencing hearing, Defendant has battled with major depression and anxiety for many years. Docket No. 138 at 47-48; Docket No. 159 at 10-12. Nevertheless, Defendant has proven to be an active participant in his recovery process, ever since the moment of his arrest. Docket No. 159 at 10-12. He still receives intensive group and individual therapy, not just for his depression and anxiety disorders, but also to address the psychosexual nature of his crimes. *Id.* at 11. His progress is further evidenced by the fact that he has completed several courses in business administration and the culinary arts and is also gainfully employed, all of this despite his psychological problems and the trauma he has undoubtedly undergone as a result of his conviction and the strict conditions of his lengthy supervised-release term. *Id.* Finally, although he has always had the support of his family, he has now become a source of support for them,

---

[1] As in the first sentencing hearing, the Court here takes into consideration the two psychosexual reports prepared by Dr. Mendez and Dr. Berrios, the Forensic Polygraph Report, and the testimony and cross-examination of Dr. Berrios at the first hearing. The Court also takes into consideration the two extensive memoranda submitted by the parties for resentencing purposes. Docket Nos. 159 & 160.

taking care of his parents in their old age. *Id.* at 12.[2] In view of the progress Defendant has made, the fact that he is a productive member of society and gainfully employed, that he has a strong support system of family, and that he also takes care of his elderly parents, the Court finds that this sentencing factor weighs heavily in favor of resentencing Crespo-Rios to time served.

II. **The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment**

As the Court stated in the first sentencing hearing, Defendant pled guilty to "very serious offense[s]." Docket No. 138 at 56. The seriousness of his conduct is certainly not to be belittled, given that even the simple possession of child pornography results in perpetual harm to victims and also normalizes the exploitation of children. *See, e.g.*, Sentencing Commission, Report to the Congress: Federal Child Pornography Offenses (2012), http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf. Nevertheless, imprisonment is not the only available sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Even the Sentencing Commission has recognized, as the Court does, that "[i]ncreasing numbers of courts and parties in non-production cases have engaged in [] sentencing practices that have had the effect of limiting the sentencing exposure for many offenders as a result of the view that the current non-

---

[2] Other personal characteristics taken into consideration by the Court at the time of the first sentencing hearing remain unchanged, such as Defendant's lack of prior criminal history. Docket No. 138 at 47. The results of the thorough psychosexual evaluation by Dr. Berrios —who found that Crespo-Rios was extremely remorseful and had a very low risk of recidivism, as well as a lack of evidence suggesting that he had any pedophile tendencies— also remain equally compelling, justifying a sentence of time served. Docket No. 138 at 36.

Criminal No. 08-208 (JAG) 4

production sentencing scheme is outmoded, fails to distinguish adequately among offenders based on their levels of culpability and dangerousness, and is overly severe in some cases." *Id.* at xii. The Court finds that sentencing Crespo-Rios to a term of imprisonment within the Guidelines range would not take into account his level of culpability and sexual dangerousness, and would also be overly severe. This is true in view of the content of his child pornography collection, which consisted of about 300 images and 2 videos. Docket No. 160 at 13. The volume of the collection and the extent to which Crespo-Rios organized and accessed it point to a lower level of culpability and dangerousness given that, as the defense points out, "the bulk of th[e] images were found on a hard disk that had not been accessed in years, and the collection was far from organized or extensive." Docket No. 159 at 5. Also relevant are Crespo-Rios's level of contrition and his recognition that the crimes to which he pled guilty were "denigrating." Docket No. 138 at 45.

Moreover, several courts have recognized that a conviction for a sexual offense involving a minor carries with it serious collateral consequences that the sentencing court can appropriately take into consideration when evaluating § 3553(a)(2)(A). *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (finding a downward variance reasonable where the district court took into consideration "the lasting effects of being required to register as a sex offender" when evaluating the § 3553 sentencing factors); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (affirming a downward variance where the district court found that the loss of a teaching license and state pension adequately reflected "the need for just punishment" as well as the need for "adequate deterrence"). In this case, Defendant was sentenced to a lengthy supervised-release term of 15 years. Docket No. 129. Not only is he a registered sex offender,

which in and of itself has caused Defendant substantial psychological stress, but also his freedom has been significantly restricted: he is not allowed to use the Internet; he must continue to participate in extensive sex-offender treatment; he must submit to polygraph testing on a continuing basis; he waived his right to confidentiality with regard to any mental-health records; he is not allowed any unsupervised contact with minors and, likewise, he is not allowed to attend places or activities intended for children; finally, his ability to travel —and, therefore, his ability to visit and spend time with his family in Florida— has been severely curtailed. Docket No. 138 at 49-53. All of these conditions, together with the approximately two weeks that he spent incarcerated, adequately reflect the seriousness of the offenses and constitute just punishment. Moreover, the severity and length of the conditions imposed promote respect for the law without the risk that "the law [be] viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007) (internal quotation marks and citations omitted).

### III. The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of Defendant

As discussed above with regard to the need to promote respect for the law, the Court finds that the prosecution of Defendant, his conviction, and a sentence of time served followed by a 15-year period of strict conditions of supervised release, including sex offender registration, together serve as an effective deterrent of future criminal conduct. Courts have discretion to use different means to pursue the goals of deterrence and protection of the public from further crimes. As in *United States v. Grossman*, the Court here chooses to achieve these goals "not through

a longer term of imprisonment, but through extensive counseling and treatment and an extensive period of supervised release, which itself contains substantial limitations on an individual's freedom." 513 F.3d 592, 597 (6th Cir. 2008).

Particularly with regard to the need to protect the public from further crimes of Defendant, as mentioned above, the findings of Dr. Berrios's psychosexual report and her testimony at the first sentencing hearing hold water. At the first hearing, Dr. Berrios testified at length about her findings that Defendant had a very low risk of recidivism and was extremely remorseful about his conduct. Docket No. 138 at 36. Not only that, Dr. Berrios also found that there was a lack of evidence suggesting that Defendant had a sexual attraction to minors or pedophilic tendencies. *Id.* She highlighted the concern that Crespo-Rios's progress would be severely held back if he was incarcerated and did not continue to receive the sex-offender treatment he is currently receiving. *Id.* Moreover, the Court notes that Crespo-Rios has significantly progressed in his rehabilitation in big part out of his own initiative, as evidenced by his remorsefulness and his promise to the Court, society, and his family to "never again becoming involved in any action as denigrating as this one for the rest of [his] life." *Id.* at 45. This promise lends strong support to the conclusion that imprisonment is not necessary to deter Crespo-Rios from engaging in future criminal conduct or to protect the public from any future criminal acts of his doing.

### IV. To Provide Defendant with Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment

The Court maintains its position that the need to provide Defendant with a meaningful opportunity to receive mental-health treatment and counseling weighs heavily in favor of a

sentence of time served. As Dr. Berrios indicated in her report and during her testimony at the first sentencing hearing, incarcerating Crespo-Rios would seriously undermine the progress he has made with regard to his rehabilitation. Docket No. 138 at 35. The Court believes that it is of the utmost importance that Defendant is able to receive extensive counseling and psychological treatment, which indeed he has been able to obtain during his extended period of supervised release and also when he was on bail prior to sentencing. Docket No. 159 at 11. As the defense points out in its memorandum, Crespo-Rios is taking a complex and heavily monitored regimen of antidepressant and antianxiety medication. *Id.* at 7. Not only that, he continues to actively participate in his recovery process, receiving intensive group and individual therapy, not only to address his depression and anxiety disorders, but also to get to the root of the sexual nature of the conduct that brought him before this Court. *Id.* at 11. Crespo-Rios has also taken advantage of his time-served sentence to successfully complete several educational courses in business administration and the culinary arts, which in turn has allowed him to obtain gainful employment. *Id.* In view of the above, it is evident to the Court that Crespo-Rios is genuinely committed to his rehabilitation and, accordingly, the Court is disinclined to jeopardize his progress. *Pepper v. United States*, 562 U.S. 476, 490 (2011) (holding that "when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range"). Finally, the Court finds especially forceful the Guidelines' own recognition that, in considering whether to impose a term of incarceration, courts should keep in mind that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18

U.S.C. § 3582(a). On the contrary, the Court believes that interrupting Crespo-Rios's current therapy through abrupt incarceration would plunge him into a depressive state that would likely destroy past rehabilitative efforts and cripple his ability to be of service to his family and a law-abiding member of society.[3]

V. The Need to Avoid Unwarranted Sentence Disparities

In the first sentencing hearing, the Court recognized that, although the Guidelines range was 70 to 87 months of incarceration, "in cases similar to this for possession of child pornography . . . [the Court has previously] done variances and [has] given long supervised release terms and no incarceration." Docket No. 138 at 42. Not only has this Court previously imposed time-served sentences in comparable cases, but a report prepared by the Federal Defender's Sentencing Resource Counsel in 2013 shows that many federal courts across the nation have also given time-served sentences to defendants similarly situated to Crespo-Rios. Docket No. 159 at 24-31.[4] For example, in *United States v. Duhon*, the Fifth Circuit affirmed a sentence of 60 months of probation given that the district court "made clear that it believed probation was appropriate because of a variety of characteristics particular to [the defendant's] case, including the absence of a criminal history and its belief that [he] would benefit from continuing treatment with his doctor." 541 F.3d 391, 397 (5th Cir. 2008). Similarly, in *United*

---

[3] The Court also notes that Crespo-Rios's U.S. Probation Officer, Silvia Ortiz, has informed the Court that Defendant has never once violated the conditions of his supervised-release term, and has always been cooperative and polite.

[4] This report, which briefly summarizes over 70 cases, is available at https://www.fd.org/docs/default-source/select-topics---sentencing/list-of-child-pornography-cases-in-which-defendant-received-sentence-of-probation-or-one-day.pdf?sfvrsn=9.

*States v. Stall*, the Sixth Circuit affirmed a sentence of a single day of incarceration followed by 10 years of supervised release, given that the district court gave weight to "the defendant's exceptional expression of remorse, immediate cooperation with the investigation, commitment to counseling, and demonstrated promise for rehabilitation." 581 F.3d 276, 289 (6th Cir. 2009). Another example is *United States v. Polito*, where the Seventh Circuit affirmed a sentence of one year of house arrest and five years of probation given that the district court stated that there was no evidence that the defendant would be a threat to the community or young children, that the defendant had no prior criminal history, and that the defendant "had conducted himself in a very positive way, receiving mental health treatment, maintaining employment, and avoiding any problem with the law . . . ." 215 F. App'x 354, 357 (5th Cir. 2007).

Notably, our sister courts within this circuit have also imposed sentences involving no jail time. *See, e.g.*, United States v. McDonald, No. 08-30031 (D. Mass. 2008) (5 years of probation given that the defendant showed "an unusually dramatic level of acceptance of responsibility, [] the defendant ha[d] an unusually high likelihood of rehabilitation and unusually strong support network, [] the [c]ourt believe[d] that the defendant [was] not a pedophile . . ., and [] the defendant's criminal acts were an aberration from how he conducted his life"); United States v. Helbig, No. 08-30052 (D. Mass. 2009) (5 years of probation given "the defendant's unusually strong expression of contrition and regret, [] the defendant['s] understanding of how destructive child pornography truly is, [] that the defendant d[id] not present a risk to children, and [that] the defendant ha[d] strong family support"); United States v. Ramos, No. 08-30034 (D. Mass. 2010) (48 months of probation given that "the defendant ha[d] a well-documented, lengthy, and persistent depressive condition which contributed to the commission of the

offense, [] the defendant's immediate and complete cooperation with authorities . . ., []the defendant ha[d] unusually strong support from his church and community, [] the defendant [was] engaged in effective, ongoing, and committed mental health treatment, and [] the defendant [was] an extremely promising candidate for rehabilitation and he pose[d] virtually no risk to the children of [his] community"); United States v. Teves, No. 11-10351 (D. Mass. 2012) (6 months of home confinement and 5 years of probation where the defendant's doctors reported that he presented no danger to the community and that incarceration would interrupt successful treatment); United States v. Reardon, No. 11-10325 (D. Mass. 2012) (5 years of probation where the defendant had a history of bipolar disorder and suicidal tendencies); United States v. Proulx, No. 11-10274 (D. Mass. 2012) (6 months of home confinement and 5 years of probation given that the defendant had no pedophilic interest in children and he had a strong work history as well as strong family support). Among the reasons cited by these courts are reasons that are also cited by this Court in the present case, to wit: a defendant's rehabilitation after undergoing extensive therapy; a defendant's deep contrition and his understanding of the seriousness of the offense; a defendant's strong family support; a defendant's lack of criminal history; the risk that incarceration would interrupt a defendant's successful treatment by his physicians; a defendant's history of depression and suicidal tendencies; a defendant's lack of pedophilic interest in children; and, finally, a defendant's low risk of recidivism. *See* Docket No. 159 at 24-31. It is more than likely that since the year 2013, when the Federal Defender's Sentencing Resource Counsel's report was prepared, more courts have given similar sentences to defendants with comparable records to Crespo-Rios's. These cases undoubtedly reflect the trend described above that courts do not sentence within the

Criminal No. 08-208 (JAG)                                                                                                            11

Guidelines recommended range when such range "fails to distinguish adequately among offenders based on their levels of culpability and dangerousness, and is overly severe . . . ." Sentencing Commission Report on Federal Child Pornography Offenses at xii. Finally, the Court notes that, as Judge Torruella points out in his dissent, the fact that the Court calculated the correct Guidelines range inevitably leads to the conclusion that the Court is mindful of the need to avoid sentencing disparities. Docket No. 141 at 19 (quoting *Gall*, 552 U.S. at 54) ("As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities."). In view of the above, the Court finds that it is sufficiently justified in resentencing Defendant to time served followed by an extended period of strict conditions of supervised release.

VI.    **The Kinds of Sentences Available and the Sentencing Range Established for the Offense**

As described above in the context of sentencing disparities, the Court must reemphasize that it has carefully considered and given significant weight to the Sentencing Guidelines. This is evident given that the Court has not followed the recommended Guidelines range, and has instead chosen to sentence Defendant to time served followed by extensive psychological therapy and strict supervised release. *See, e.g.*, *United States v. Phillips*, 516 F.3d 479 (6th Cir. 2008) (district court's recommendation that the defendant serve his sentence in his home town near his sick mother indicates it considered the kinds of sentences available); *United States v. Ruff*, 535 F.3d 999 (9th Cir. 2008) (affirming a variance to one day of imprisonment followed by 3 years of

supervised release because it reflected the kinds of sentences available in that such a sentence would permit the defendant to participate in work release, receive counseling, and make visits to his young son). The Court is convinced that this factor, too, weighs in favor of resentencing Crespo-Rios to time served and supervised release.

## CONCLUSION

After carefully reviewing the factors outlined in 18 U.S.C. § 3553, and taking into account the Guidelines' recognition that "imprisonment is not an appropriate means of promoting correction and rehabilitation," 18 U.S.C. § 3582(a), the Court maintains its position that a sentence of time served coupled with a strict 15-year period of supervised-release conditions is a sufficient —but not greater than necessary— sentence that amply complies with the purposes of the Sentencing Guidelines. Wherefore, the Court shall impose the same sentence it imposed on Defendant on August 14, 2015. An appropriate judgment shall be entered.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 19th day of October, 2015.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
